### Joseph Moore v. People of the State of Illinois.

1. CRIMINAL LAW—*Extortion by Threats.*—A threat is a menace and while it must be directly made, it need not be in any particular form or phrase. Any language which conveys the intended meaning with sufficient clearness to be understood, is sufficient.

Indictment, for extorting money. Error to the Circuit Court of Vermilion County; the Hon. FERDINAND BOOKWALTER, Judge, presiding. Heard in this court at the November term, 1896. Affirmed. Opinion filed February 25, 1897.

LAWRENCE & LAWRENCE, attorneys for plaintiff in error.

S. G. WILSON, State's attorney, for defendant in error; G. T. BUCKINGHAM, of counsel.

MR. JUSTICE WALL DELIVERED THE OPINION OF THE COURT.

The plaintiff in error was convicted upon an indictment based on Section 93 of the Criminal Code, which provides that "Whoever, either verbally or by written or printed communication, threatens to accuse another of a crime or misdemeanor  *  *  *  with intent to extort money, goods chattels or other valuable thing,  *  *  *  shall be fined in a sum not exceeding $500, and imprisoned not exceeding six months." The indictment charged that the plaintiff in error verbally threatened to accuse one Horace Haworth of larceny with intent to extort, etc. It appears that the prose-

cuting witness and another person were apprehended by the police of Danville late at night on the suspicion that they had stolen a lap robe, but upon the suggestion of the owner of the property they were discharged and permitted to go to their homes some distance in the country. Plaintiff in error, and one Stokes, who were on the police force, were present and knew the circumstances of the arrest and discharge. The prosecuting witness and his companion had been drinking freely and the plaintiff in error and Stokes, taking note of their fears, conceived the plan of extorting one hundred dollars from them as the price of suppressing a prosecution for the supposed offense. Accordingly the plaintiff in error went early the next morning to the home of Haworth and represented to him that he was "going to get into trouble about taking the lap robe," for which he would be sent "over the road;" that Stokes "was raising a big kick" about it, and said they should not have let him, Haworth, go the night before, but that he could stop it for $100. Haworth said he had not the money, but he had a horse, and plaintiff in error having looked at the animal, agreed to take it at $60, saying he would go back and see Stokes about it, and if he could get him to settle he would return the next day.

He did return the next day, bringing Stokes with him, and after some discussion of the matter Haworth gave them the horse and his note for $40, and they went away.

It is insisted on behalf of the plaintiff in error that there was no evidence of a threat by him to accuse Haworth, but that at most he merely intimated that Stokes would prosecute, unless bought off.

A threat is a menace, and while it must be directly made, it need not be in any particular form or phrase. Any language which conveys with sufficient clearness to be understood the proposition that a charge will be made is enough.

The threat may be bluntly spoken, or it may be thinly veiled in suggestive terms. A brief reference to the testimony will be necessary. Haworth testified that the plaintiff in error appeared at the farm about eight o'clock in the

morning, and said he came to tell him that he was going to
get into trouble for taking a lap robe for which they would
send him over the road; that he was to be arrested for tak-
ing the robe; that Stokes was "raising a big kick" about
it, and that he and Stokes should not have let them go that
night; that Stokes would give him away to the grand jury;
that he would be reported to the grand jury unless it was
fixed up in some way.

In the second interview Stokes said that he had to live,
and if he let such things go, or something like that, they
would lose their jobs.

Plaintiff in error was present when Stokes made this dec-
laration.  Stokes, who had pleaded guilty, was a witness and
testified that he said something to that effect.  The plaint-
iff in error testified in his own behalf.  He gave his account
of what transpired when Haworth was arrested and dis-
charged, and said he and Stokes had a conversation after
the man left, in which Stokes said they ought to have $100
out of it.  The next morning he went to Haworth and
found him at his father's barn.  He also said (we quote
from the abstract):

" I told Haworth I had come down to see him in his behalf;
that Stokes had made the remark that he would put him
before the grand jury, and it would cost something and he
would make something out of it.  Mr. Haworth said he had
been in trouble enough and he didn't want any more trouble;
and I told him Stokes had made the remark he would be
damned if he hadn't ought to have something out of it—or
a $100 out of it—and that he made the remark about the
grand jury; and I said, if you can settle this, right now is
the time to settle it.  I says: You don't want to get before
the grand jury; he said, I wouldn't go before the grand
jury and let my people know what I have done there for
all I have got."

Further, he stated that in the second conversation Stokes
said he " had to live, and if he did not do his duty he would
be discharged, and that he thought it was worth $100;"
that Stokes, after looking at the horse, asked him if he

would take it at $60, and take Haworth for $40; to which he assented, and then they went through a bit of play which they had agreed on, by which he gave Stokes his check for $60.

It is perfectly apparent that the plaintiff in error intended to impress Haworth with the prospect of an accusation if he did not settle, and while, as he put it, Stokes was making the trouble and he was trying to suppress it, yet this was only a way of making the threat, and that he intended Haworth should understand that he and Stokes were acting together, and that unless they were paid the prosecution would proceed. He was a party to it the same as Stokes, and it was so understood by Haworth. It was intended that Haworth should so understand it. Very clearly, the plaintiff in error was guilty, within the spirit of the statute, and, as we think, within the letter. By various forms of suggestion and advice he conveyed a threat of prosecution, and as clearly gave it to be understood that he would co-operate with Stokes therein unless they were bought off.

Complaint is made of the rulings of the court on admission of evidence, and more particularly in excluding certain questions on cross-examination, but on turning to the record, which is more satisfactory as to details than the abstract, we find no just cause for objection.

Some criticism of instructions is also made, but when the whole series is considered in the light of the evidence we find no substantial error.

The main question in the case is whether the evidence (which is not much in conflict on any important point) sufficiently supports the verdict of guilty. If it is necessary to prove a threat couched in so many words, as "I will accuse you if you do not pay me to desist," then the case is not made out. If, however, it is sufficient to show that by any form of expression actually used such a proposition was intended to be conveyed, and was so understood, then it is made out, most amply. We are of opinion the conviction was rightly had, and the judgment will be affirmed.