**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Marvin Edward HASS, Defendant and Appellant.**

**Crim. No. 631.**

Supreme Court of North Dakota.

May 24, 1978.

See also, N.D., 264 N.W.2d 464.

458

Richard L. Schnell, State's Atty., Mandan, for plaintiff and appellee State of North Dakota.

Daniel J. Chapman, Bismarck, for defendant and appellant.

VOGEL, Justice.

The appellant was charged with the crime of terrorizing[1] and was found guilty by a jury of the lesser-included offense of menacing.[2] This appeal followed. We remand for resentencing.

The charge against the defendant arose from a melee on a rural road. After the closing of a bar in the small town of St. Anthony, the patrons, more or less intoxicated, emerged. Several six-packs of beer, belonging to one person, were taken by one of the occupants of the defendant's car. The indignant owner, with several of his friends, in two vehicles, engaged in hot pursuit. The melee occurred when the pursuers caught up with the pursued, and a free-for-all involving men and women, old and young, ensued. At some point the defendant got a .22 rifle from his vehicle, and admittedly fired it into the air twice, in order, he testified, to defend his friends. The State's testimony was that he pointed it through a windshield at three occupants of a car and said he ought to blow their heads off, and shortly afterward fired the rifle at unspecified targets.

The appellant raises eight issues, which we paraphrase:

1. Whether the court erred in refusing defendant's motion to dismiss the prosecution for the reason that a hearing for revocation of probation on a prior offense was held before the trial in the present case, and was based on the same facts for which he was prosecuted in the present case, thereby forcing the defendant to waive his constitutional right against compelled self-incrimination at the subsequent criminal trial if he testified in the probation-revocation hearing.

2. Whether the court erred in giving an instruction based on subdivision 2 of Section 12.1–05–01[3] under the circumstances of this case.

3. Whether the court's instructions were "inadequate in refusing to instruct the jury as to self-defense that the danger need not be actual but only such as would arouse in the mind of a reasonable person an honest conviction and fear that he is or someone else in whose defense he is coming is about to suffer bodily injury."

4. Whether the court erred in denying defendant's motion for a mistrial, after a prosecution witness stated that "The suspects in the case were incarcerated at that time and no statements were made or taken from any one of those individuals."

5. Whether the court erred in admitting into evidence testimony to the effect that a flat tire on a car was caused by metal "similar" to a .22 bullet, when the testimony showed the car in question was not at the scene when the shots were fired.

6. Whether the court in admitting into evidence testimony as to the location of the scene of the altercation, when the foundation for the identification of the scene was allegedly inadequate.

7. Whether the court erred in denying a motion for dismissal, on the basis that the statement of the defendant that he "ought" to blow the head off one of the parties was not a threat to commit a crime of violence or an act dangerous to human life.

8. Whether the court abused its discretion in imposing a maximum sentence when

1. "12.1–17–04. Terrorizing.—A person is guilty of a class C Felony if he:

 "1. Threatens to commit any crime of violence or act dangerous to human life; or

. . . . .

2. "12.1–17–05. Menacing.—A person is guilty of a class A misdemeanor if he knowingly places or attempts to place another human being in fear by menacing him with imminent serious bodily injury."

3. "12.1–05–01. Justification.—1. Except as otherwise expressly provided, justification or excuse under this chapter is a defense.

 "2. If a person is justified or excused in using force against another, but he recklessly or negligently injures or creates a risk of injury to other persons, the justifications afforded by this chapter are unavailable in a prosecution for such recklessness or negligence.

. . . . .

the defendant had already been sentenced on a prior charge after revocation of probation for essentially the same acts, and considered unfavorably to the defendant the fact that he had not taken a first step toward rehabilitation by pleading guilty, and that he had not thrown himself on the mercy of the court, and that he spoke only through his attorney, and that the court assertedly failed to consider in sentencing the factors set forth in Section 12.1–32–04, N.D.C.C.

## 1

In a prior appeal, decided after the briefs in the present appeal were written, we disposed of the major aspect of this question. *State v. Hass*, 264 N.W.2d 464 (N.D.1978). We held there that "The fact that Hass was required to make such a choice [whether to answer the charges against him by use of his own testimony or to assert his Fifth Amendment privilege at the risk that the State would have sufficient prima facie evidence to sustain its burden of persuasion], regardless of how difficult, did not render his testimony unconstitutionally 'compelled' by the State." We further held: "The circumstances required Hass to make a difficult decision, but neither his Fifth Amendment right against compelled self-incrimination nor his due process right to testify was violated thereby."

■ We believe that in certain instances the prosecutors and the courts should give serious thought to forego use of the same criminal act as a basis for both an independent prosecution for a substantive crime and as a basis for a revocation of probation or parole or sentencing a defendant who has been granted a deferred imposition of sentence. If, in all probability, the resulting sentences after revocation and conviction of a substantive crime will run concurrently or will not be materially increased, then the revocation proceedings should be delayed until after the substantive-crime violation has been disposed of, at which time it may be determined that it will not be necessary to conduct a revocation proceeding. To follow both procedures is to create, usually unnecessarily, a tension between the Fifth Amendment right to remain silent at the first hearing and the danger that defendant's testimony at the first hearing may be used to convict or bring on the revocation at the second. Following both procedures may raise a serious question of fairness and procedural due process.

If unusual circumstances make it necessary to follow both procedures simultaneously, it will ordinarily be preferable to bring on the substantive criminal charge first, rather than last, as was done here.

■ Hereafter, if revocation proceedings precede substantive criminal proceedings and both are based upon the same acts, we will follow the lead of *People v. Coleman*, 13 Cal.3d 867, 120 Cal.Rptr. 384, 533 P.2d 1024 (1975), where the Supreme Court of California, en banc, adopted the rule that testimony given by the accused at a revocation hearing would be excluded, and could not be used directly at the subsequent trial on the substantive charge. Such a rule promotes, as the California court noted, the meaningful opportunity of the accused to be heard and to explain his actions without fear that his testimony would be used directly later to convict him of the substantive charge. It obviates the need to consider the question of fairness and procedural due process mentioned above.

This rule is consistent with our holding in the earlier appeal, which held, as the California court did in *Coleman, supra*, that the Constitution of the United States and the State do not preclude the prior revocation hearing.

The State Supreme Court's supervisory power over the district court, together with its concern for fundamental fairness, authorizes the sort of the rule we have stated, just as the California court's supervisory power was used to fashion the rule in that State.

At the trial of the substantive crime, the testimony of Hass at the revocation hearing was used on cross-examination in an attempt at impeachment. Actually, there

was little or no inconsistency between the testimony at the revocation hearing and at the trial, but the attempt to impeach was made. We do not preclude such use of prior testimony for impeachment in the future, nor did the California court in *Coleman.* See 120 Cal.Rptr. 384, 533 P.2d at 1044.

### 2

The court gave an instruction based on Section 12.1–05–01, quoted in footnote 3, *supra.* We are tempted to join in the comment of the district judge, in chambers, describing that section as "gibberish." To the extent that it can be understood at all, it provides that any justification or excuse in Chapter 12.1–05 (which includes self-defense) is a defense, and that a person who is otherwise justified or excused in using force against another is not justified in doing so if he is prosecuted for recklessness or negligence and he recklessly or negligently injures or creates a risk of injury to other persons.

▮ We add that Section 12.1–17–04, defining the crime of "terrorizing," which the defendant was charged with violating, contains no language as to the degree of culpability necessary, and therefore the degree of culpability required is that it be done "willfully." Sec. 12.1–02–02, subsec. 2, N.D.C.C. The term "willfully" includes the term "recklessly." Sec. 12.1–02–02, subsection 1–e, N.D.C.C. The defendant therefore was being prosecuted for "recklessness," making applicable the language we have been discussing in Section 12.1–05–01 as to justification.

▮ Since the defendant appeared to be claiming self-defense, the trial court really had no choice but to give an instruction based upon Section 12.1–05–01. That such an instruction would be confusing to a jury can scarcely be doubted. Nevertheless, we cannot hold that it was error to give the instruction when the law unconditionally requires it.

▮ Self-defense was an appropriate affirmative defense, appropriately asserted, and Section 12.1–05–01 was applicable to the extent that its meaning can be understood.

### 3

We cannot agree that the court's instructions as to self-defense were inadequate due to a refusal to instruct the jury that the danger need not be actual but only such as would arouse in the mind of a reasonable person an honest conviction and fear that he or someone else is about to suffer bodily injury. The court gave the jury the following instruction:

"A person is not justified in using more force than is necessary and appropriate under the circumstances. A person's conduct is excused if he believes that the facts are such that his conduct is necessary and appropriate even though his belief is mistaken. In other words, the force exercised by a person in his own self-defense, or by the person acting in the defense of another person, is not deemed excessive if it is no greater than that which the actor reasonably believed to be necessary to repel the offense at the time of the incident."

▮ This instruction, it appears to us, covers the problem raised by the defendant, namely, that one may reasonably think he is being attacked and is in danger when actually he is not in danger. Of course, it also covers the situation where the force used to repel an attack is claimed to have been excessive under the facts as seen by hindsight. In either case, the law is that the amount of force which may lawfully be used is not to be regulated by hindsight, but is measured by the reasonable beliefs of the person who apparently is being attacked at the time of the incident. We are satisfied that the instruction quoted is adequate and there was no error in the refusal to give an additional requested instruction on the same subject.

### 4

The defendant claims that the court erred in denying his motion for mistrial made within a few minutes after a witness had

stated that "The suspects in the case were incarcerated at that time and no statements were made or taken from any of those individuals." The defendant claims that this amounts to a forbidden comment on his silence, and violates our rule in *State v. Bragg*, 221 N.W.2d 793 (N.D.1974), in which we reversed a conviction in part because the State had brought out, over objection, that a defendant's response to questioning after being given the *Miranda* warning was that it was none of the questioning officer's business.

The present case does not come within the *Bragg* rule.

The testimony here was given by a deputy sheriff, who was allowed to testify in narrative form as to his actions after being notified of the melee in which the defendant was involved. He testified as to the actions of several officers in several police cars, and that a number of persons, including the defendant, were taken to the county jail. He also testified that others were taken to the hospital and then brought to the county jail. The number of persons involved was at least ten. Nowhere in his testimony is it specified who were the "suspects in the case" and who were the "individuals" from whom statements were not taken. It therefore is only a matter of speculation as to whether the defendant at that point was a suspect and whether he was asked to make a statement or refused to do so.

Further, no immediate objection was made to the testimony, and when an objection and motion to strike were made, some four sentences later, the court immediately sustained the objection and ordered the language stricken and told the jury to disregard it. The motion for mistrial followed.

■ We are satisfied that no error was committed. The suggestion that the defendant was somehow identified as an individual who had not made a statement and was thereby prejudiced is too ephemeral to indicate error under the circumstances. The prompt corrective ruling of the court cured any possible prejudice.

**5**

■ An expert testified as to the nature of metal fragments and shredded rubber found inside a tire of one of the vehicles present at the time of the melee. The tire went flat after being driven a short distance from the scene. The expert testified that metal fragments, predominantly copper and lead, were consistent with having been part of a bullet, and the shredded rubber with having come from a puncture of the tire. It was only after a considerable amount of such testimony had been received without objection that the defense objected when the exhibits (a tire, metal fragments, and shredded rubber) were offered in evidence. The oral testimony was already received without objection. We find no error in the admission of the exhibits in evidence.

It is by no means certain that the testimony shows conclusively that the car in question was not at the scene when shots were fired. The evidence of the witnesses for both the prosecution and the defense was somewhat confused as to the chronology of events.

**6**

■ The location of the altercation does not appear to us to be a central issue in the case, although some time was spent in establishing it. The location testified to by the officers was one which had been ascertained by the officers in the company of one of the witnesses, who identified it by a number of drinking straws and paper debris which originated from the purchase of fast food at a drive-in restaurant. She said that such materials were in the front seat of her car before the melee and were missing thereafter, and she assumed they were pushed out of the car during the melee. The place was also identified by the finding of a spent cartridge case which was later shown, by ballistic tests, to be identical with cartridge cases of bullets fired by the defendant's rifle. We view this identification as sufficient on a noncrucial question and find no error.

7

██ One of the witnesses testified that the defendant made a statement to the effect that he ought to blow the head off one of the parties, and the defendant argues that it was not a threat. It is enough that it could be understood to be a threat by a reasonable person under the circumstances. As Justice Holmes said in *Brown v. United States*, 256 U.S. 335, 343, 41 S.Ct. 501, 502, 65 L.Ed. 961, 963 (1921):

"Detached reflection cannot be demanded in the presence of an uplifted knife."

The defendant, according to the prosecution, was standing within a few feet of the vehicle in which the witness and others were seated, pointing a rifle directly at them, and discussing the possibility of blowing their heads off. It should be no surprise to anyone if they were terrorized or considered themselves menaced. That is all that the law requires. Threats may be made by innuendo and the circumstances may be taken into account in deciding whether the words used constitute a threat. *People v. Massengale*, 261 Cal.App.2d 758, 68 Cal.Rptr. 415 (1968).

As we said in *State v. Howe*, 247 N.W.2d 647, 654 (N.D.1976),

"No precise words are necessary to convey a threat. It may be bluntly spoken, or done by innuendo or suggestion. *In re Burke*, 9 O.C.D. 350, 17 Cr.Ct.R., N.S., 315 (1899). A threat often takes its meaning from the circumstances in which it is spoken and words that are innocuous in themselves may take on a sinister meaning in the context in which they are recited. *Herbert Burman, Inc. v. Local 3 International Brotherhood of Electrical Workers*, 214 F.Supp. 353 (S.D.N.Y. 1963)."

8

At the time of sentencing, the court made these statements, after hearing recommendations from the prosecuting attorney and the defendant's attorney:

"Okay. I guess there is nothing more to be said by either party.

"Mr. Chapman has suggested that the Court again give a deferred imposition of sentence or suspended sentence. I don't feel that's a realistic proposal. The Defendant has had this opportunity once. He didn't take the first step to rehabilitation, which generally includes making a complete admission of his implicity in the offense and throwing himself on the mercy of the Court. The Defendant has made no particular statements in Court other than through his attorney. I have no way of reaching into the recesses of his mind to determine exactly how he feels about this whole matter. Apparently I am being asked by the defense attorney to assume that the Defendant was intoxicated when he committed these acts and that, therefore, he is excused from that. But that intoxication defense was not presented to the Jury, and I don't feet I should consider it.

"In view of the fact that the Defendant has been convicted of a previous felony, it is the Judgment and Sentence of this Court that the Defendant be sentenced to serve one year at the North Dakota State Farm commencing immediately, and that he pay a fine of $1,000.00, to be paid at the rate of $500.00 within one year from release from the State Farm, and the balance of the other $500.00 two years from the date of release from the State Farm. In addition to that, the Defendant shall pay court costs in an amount to not exceed $100.00, but to be substantiated by a statement from the State's Attorney's office. If it's determined to be less than $100.00, then that should be the actual figure. Those court costs shall be paid immediately."

The sentence of one year's confinement and a $1,000 fine is the maximum authorized for the crime of menacing, of which the defendant was found guilty, and is in addition to the sentence imposed by a different judge upon revocation of probation under the previous conviction.

██ It is impermissible to penalize a defendant for standing trial instead of pleading guilty. *United States v. Jackson*,

390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968). In *State v. Nichols*, 247 N.W.2d 249 (Iowa 1976), the Iowa Supreme Court was asked to determine whether a similar statement made by the trial court during sentencing indicated that the defendant was penalized for demanding his constitutional right not to testify against himself. The trial court in *Nichols* stated at the sentencing hearing:

> "In other words, I think I'm saying to you, *had you said 'Okay. I have done this, and I'm willing now to face the consequences of my acts,' you might then be able to persuade the court that sufficient turn-around had occurred, that you should be afforded another chance."* [Emphasis in original.] 247 N.W.2d at 250.

The Iowa Supreme Court concluded:

> ". . . the fact a defendant has exercised the fundamental and constitutional right of requiring the state to prove at trial his guilt as charged and his right as an accused to raise defenses thereto is to be given no weight by the trial court in determining the sentence to be imposed after the defendant's guilt has been established." 247 N.W.2d at 255.

The same principle was stated in *Johnson v. State*, 274 Md. 536, 336 A.2d 113, 117 (1975), where the court found that an impermissible consideration may have been employed by the trial judge during sentencing. The Supreme Court stated:

> "Any doubt in this regard must be resolved in favor of the defendant. Accordingly, our part in the administration of justice requires that we find that a consideration of Johnson's failure to plead guilty was impermissible because a price may not be exacted nor a penalty imposed for exercising the fundamental and constitutional right of requiring the State to prove, at trial, the guilt of the petitioner as charged."

Most courts which have considered this question are in accord. See, e. g., *Poteet v. Fauver*, 517 F.2d 393 (3d Cir. 1975); *Scott v. United States*, 135 U.S.App.D.C. 377, 419 F.2d 264 (1969); *United States v. Stockwell*,

472 F.2d 1186 (9th Cir. 1973), *cert. denied* 411 U.S. 948, 93 S.Ct. 1924, 36 L.Ed.2d 409 (1973); *United States v. Tateo*, 214 F.Supp. 560 (S.D.N.Y.1963); *Johnson v. State, supra*, and cases cited therein.

■ A person charged with a crime has the absolute right to require the State to prove the charges against him, and his sentence may not be different if he chooses one course from that if he chooses the other. As was said more than four centuries ago:

> "A man may plead not guilty and yet tell no lie, for by the law, no man is bound to accuse himself. So when I say, not guilty, the meaning is as if I should say by way of paraphrase, I am not so guilty as to tell you, if you will bring me to trial and have me punished for this you lay to my charge; prove it against me." John Selden, "Table Talk," published by the Selden Society, London, 1927. [Spelling and punctuation modernized.]

■ Neither should a defendant be penalized because he chooses to plead for a lesser sentence through the words of his attorney, rather than his own. He has a right to appear in person or by counsel, and should not be penalized for taking advantage of his right to counsel.

■ It is the rule in this jurisdiction that sentences within the range of the minimum and the maximum are within the discretion of the trial court, and "will not be set aside for abuse of discretion unless: (1) the sentence exceeds the statutory limits [citation]; or (2) the trial judge substantially relied upon an impermissible factor in determining the severity of the sentence to be imposed [citation]." *State v. Rudolph*, 260 N.W.2d 13, 16 (N.D.1977); *State v. Smith*, 238 N.W.2d 662, 673 (N.D.1976).

■ Since it appears that the trial court may have "substantially relied upon" one or both of two impermissible factors (defendant's refusal to plead guilty and his declining to respond in person rather than through his lawyer when given an opportunity to speak prior to sentencing), we set

aside the sentence and remand the matter to the district court for resentencing.

ERICKSTAD, C. J., and PEDERSON and SAND, JJ., concur.

PAULSON, Justice (concurring and dissenting).

I agree with the majority opinion by which it affirmed the district court on Issues 2, 3, 4, 5, 6, and 7.

However, I disagree with the majority opinion with reference to the majority's reasoning and conclusion on Issue No. 1, which is set forth as follows:

"1. Whether the court erred in refusing defendant's motion to dismiss the prosecution for the reason that a hearing for revocation of probation on a prior offense was held before the trial in the present case, and was based on the same facts for which he was prosecuted in the present case, thereby forcing the defendant to waive his constitutional right against compelled self-incrimination at the subsequent criminal trial if he testified in the probation-revocation hearing."

There are three cogent reasons for disagreeing with the majority. First, this court in a prior decision, *State v. Hass*, 264 N.W.2d 464 (N.D.1978), held that even though Hass was faced with a difficult strategy decision of whether to answer the charges against him by use of his own testimony or whether to assert his Fifth Amendment privilege at the risk that the State would thereby have sufficient evidence to sustain its burden of persuasion, the fact that Hass was required to make such a choice, regardless of how difficult, did not render his testimony unconstitutionally "compelled" by the State. "It is not contended, nor could it be successfully, that the mere force of evidence is compulsion of the sort forbidden by the [Fifth Amendment] privilege." *McGautha v. California*, 402 U.S. 183, 213, 91 S.Ct. 1454, 1470, 28 L.Ed.2d 711 (1971) [cited in *State v. Hass, supra* 264 N.W.2d at 471].

The majority opinion then unequivocally states that the same criminal act should rarely be used as the basis for both an independent prosecution for a substantive crime and as a basis for revoking probation or parole or sentencing of a defendant who has been granted a deferred imposition of sentence. The majority further makes the categorical statement that the pursuit of both procedures would unnecessarily create a constitutional tension between the Fifth Amendment right to remain silent at the first hearing and the danger that defendant's testimony at the first hearing may be used to convict or revoke a deferred imposition of sentence, as the case may be, thus raising the issue of fairness and procedural due process.

In *State v. Hass, supra* 264 N.W.2d at 471, we adopted the rationale of *McGautha v. California, supra*, 402 U.S. at 213, 91 S.Ct. 1454, in which the United States Supreme Court stated:

" 'The criminal process, like the rest of the legal system, is replete with situations requiring "the making of difficult judgments" as to which course to follow. *McMann v. Richardson*, 397 U.S. [759] at 769, 90 S.Ct. [1441] at 1448, [25 L.Ed.2d 763]. Although a defendant may have a right, even of constitutional dimensions to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose. The threshold question is whether compelling the election impairs to an appreciable extent any of the policies behind the rights involved.' ";

and the North Dakota Supreme Court held in *Hass, supra* 264 N.W.2d at 472:

"In the instant case, Hass' difficult decision of whether or not to testify at the probation revocation hearing is essentially the same type of decision that defendant was required to make in *McGautha, supra*. The circumstances required Hass to make a difficult decision, but neither his Fifth Amendment right against compelled self-incrimination nor his due process right to testify was violated thereby."

The decision in *State v. Hass*, 264 N.W.2d 464 (N.D.1978), was unanimous; yet less than three months have elapsed since that

decision and the majority, without any valid reason, is in effect abortively attempting to reverse such decision.

Secondly, the majority by its decision virtually eliminates the provisions of § 12–53–13, N.D.C.C. The trial courts will no longer be of the opinion that they may continue to use § 12–53–13, N.D.C.C., as a viable aid in determining the future of defendants who appear before them, especially when considering the impact of the majority opinion as to future disposition of criminal cases.

Thirdly, the decision will remove and eliminate the prosecutorial discretion in future proceedings against those individuals who violate the criminal laws of our State. The decision as enunciated by the majority will seriously hamper the prosecutory and judicial processes, and will deprive the law enforcement officials, the judges, the defendants, and the public of their respective roles in seeing that justice is still flexible.

The majority opinion has indicated that the trial judge's statement at the time of sentencing was based upon impermissible factors. *State v. Rudolph*, 260 N.W.2d 13 (N.D.1977); *State v. Smith*, 238 N.W.2d 662 (N.D.1976). The cases cited by the majority are clearly distinguishable from the instant case. A perusal of the judge's remarks conveys an entirely different interpretation than the one adopted by the majority. The judge indicated only that Hass had been placed on probation after the first conviction and that the judge was not going to place the defendant on probation again after his commission and conviction of a second crime. A review of the court's remarks does not imply that Hass jeopardized his position by going to trial. No one can doubt the impartiality and fairness of the trial court in the instant case. As stated by Justice Harry A. Blackmun, and Chief Justice Warren E. Burger who joined in the dissent, in *United States v. Tucker*, 404 U.S. 443, 452, 92 S.Ct. 589, 594, 30 L.Ed.2d 592 (1972):

> "On remand the case presumably will go once again to Judge Harris, and undoubtedly the same sentence once again will be imposed. Perhaps this is all

worthwhile and, if so, I must be content with the Court's disposition of the case on general principles. I entertain more than a mild suspicion, however, that this is an exercise in futility, that the Court is merely marching up the hill only to march right down again, and that it is time we become just a little realistic in the face of a record such as this one."

I would affirm the judgment of conviction of the district court and its sentencing of the defendant.