STATE of North Dakota, Plaintiff
and Appellee,

v.

Craig E. MARTIN, Defendant
and Appellant.

Criminal Nos. 950165, 950166 and 950167.

Supreme Court of North Dakota.

Jan. 30, 1996.

David T. Jones (argued), Assistant State's Attorney, Grand Forks, for plaintiff and appellee. Appearance by Faye Jasmer, third year law student.

Arnason Law Office, Grand Forks, for defendant and appellant; argued by Thomas C. Wilson.

MESCHKE, Justice.

Craig E. Martin appeals from the denial of his motion to suppress evidence and from his convictions, through conditional guilty pleas, for driving with his license suspended, driving under the influence of alcohol, and driving without liability insurance. We affirm all three convictions.

While patrolling during a winter storm around 11:15 p.m. on January 27, 1995, North Dakota Highway Patrolman Jerry Olson received a radio report of a vehicle in the ditch of the west-bound lane of Highway 2 near Arvilla, North Dakota. A military pickup from the Grand Forks Air Force Base and a tow-truck were already there when Olson arrived. When asked, the tow-truck operator told Olson the driver of the stuck vehicle was in the Air Force pickup. Olson found Martin in the pickup, and Martin agreed to accompany Olson to his patrol car.

Once in the patrol car, Olson asked Martin for his driver's license. Martin told Olson, and a radio check confirmed, that his license had been suspended. Olson asked Martin if he was the driver of the vehicle in the ditch, where he was traveling from and to, and if he was alone. Martin responded that he was driving alone from Grand Forks to Belcourt. Olson arrested Martin for driving under suspension.

While in the patrol car, Olson also detected the odor of alcohol and observed that Martin's eyes were bloodshot and his speech slurred. Because of weather conditions, Olson took Martin to the Grand Forks County Correctional Center to perform field sobriety tests. Martin was then arrested for driving

under the influence of alcohol. Inexplicably, Olson never advised Martin of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), even after the first arrest or at any time thereafter that night. On February 2, 1995, Martin was also charged with driving without liability insurance.

Martin moved to suppress his statement to Olson that he was driving alone to Belcourt. Martin argued that the questioning constituted custodial interrogation, and that Olson's failure to advise Martin of his *Miranda* rights rendered the statement inadmissable. The suppression motion, however, only pertained to the charge of driving under the influence; Martin did not move to suppress the statement for the charges of driving under suspension or driving without liability insurance. The trial court denied suppression, concluding Olson's questions were "investigatory in nature and not custodial and therefore did not require Miranda type warnings." Martin conditionally pleaded guilty to all three charges under NDRCrimP 11(a)(2), reserving his right to appeal the denial of suppression.

■ While Martin appealed all three convictions, the only question that his conditional plea preserved was the trial court's denial of suppression. *See State v. Kraft*, 539 N.W.2d 56 (N.D.1995). Since Martin failed to move to suppress the statement for the charges of driving under suspension and driving without liability insurance, he has failed to preserve any appealable issues for those convictions. Therefore, the convictions of driving under suspension and without liability insurance are summarily affirmed without discussion.

For the conviction of driving under the influence, Martin argues the trial court improperly denied suppression because Olson's pre-arrest questioning of Martin in the patrol car was "custodial interrogation." Because Olson failed to advise Martin of his *Miranda* rights, Martin argues the trial court should have suppressed his pre-arrest admission that he was driving. We disagree.

■ "We affirm a trial court's decision on a motion to suppress unless, after resolving conflicting evidence in favor of affirmance, we conclude there is insufficient competent evidence to support the decision, or unless we conclude the decision goes against the manifest weight of the evidence." *State v. Hawley*, 540 N.W.2d 390, 392 (N.D.1995). Still, while we generally "defer to the trial court's findings of fact" on the circumstances surrounding the interrogation, *id.*, the ultimate determination of "whether a suspect is 'in custody,' and therefore entitled to *Miranda* warnings, presents a mixed question of law and fact qualifying for independent review." *Thompson v. Keohane*, — U.S. —, —, 116 S.Ct. 457, 460, 133 L.Ed.2d 383 (1995); *see id.* at —, 116 S.Ct. at 465. Therefore, the trial court's ultimate determination, that the questioning was "investigatory in nature and not custodial," is fully reviewable on appeal.

■ To protect against involuntary admissions and confessions in inherently coercive and police-dominated atmospheres, *Miranda* warnings are due when a suspect interrogated by police is "in custody": "[T]he person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612. "An officer's obligation to administer *Miranda* warnings attaches, however, 'only where there has been such a restriction on a person's freedom as to render him "in custody."'" *Stansbury v. California*, — U.S. —, —, 114 S.Ct. 1526, 1528, 128 L.Ed.2d 293 (1994) (quoting *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977)). When analyzing "whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation," *Stansbury*, — U.S. at —, 114 S.Ct. at 1529, but "the ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (quoting *Mathiason*, 429 U.S. at

495, 97 S.Ct. at 714); *see also State v. Connery*, 441 N.W.2d 651, 654 (N.D.1989). As the Supreme Court explained in *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984), "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation."

■ Martin concedes that "ordinary traffic stops are not usually deemed to be custodial stops triggering the need for Miranda warnings." *See Pennsylvania v. Bruder*, 488 U.S. 9, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988); *Berkemer*, 468 U.S. at 435–40, 104 S.Ct. at 3147–48; *State v. Fasching*, 453 N.W.2d 761, 763–64 (N.D.1990). However, he argues his situation is different because he "was not questioned from his seat in the air force base vehicle, nor was [he] questioned on the roadside, but rather [he] was ordered into the patrol vehicle and subjected to a series of questions from Trooper Olson." At oral argument, Martin conceded that his statement would be admissible if Olson had asked the same questions while Martin was in the Air Force pickup or while they were outside. Thus, in essence, Martin is arguing that the questioning was custodial simply because it took place in a police car.

■ Although we agree that "custodial interrogation" can take place in a police car, *Fasching*, 453 N.W.2d at 764, *Miranda* protection certainly does not extend to all questioning that takes place there. Instead, the determination of whether a person questioned in a police car is "in custody" must depend on the specific facts of each case. *See Stansbury*, —— U.S. at —— – ——, 114 S.Ct. at 1528–29. To make this determination, "the factual situation, atmosphere, and physical surroundings during the investigation and questioning must be considered to ascertain the degree of police domination and restraint or compulsion." *State v. Berger*, 329 N.W.2d 374, 377 (N.D.1983). Consideration of these factors is essential for answering the "ultimate inquiry ... [of] whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Beheler*, 463 U.S. at 1125, 103 S.Ct. at 3520 (quoting *Mathiason*, 429 U.S. at 495, 97 S.Ct. at 714). Ab-

sent an arrest or a like restraint, a person is not "in custody" for purposes of *Miranda* even if the questioning takes place in a police car.

■ Here, Olson asked Martin, who was in the Air Force pickup, to join him in his patrol car. This record does not support Martin's assertion that Olson "ordered" him into the patrol car. Furthermore, severe winter weather was occurring at the time. Contrary to Martin's argument, it would have been unreasonable for Olson to have joined Martin in the Air Force pickup, even assuming there was room, because this would have detained the Air Force pickup and its occupants at the scene.

It would also have been unreasonable, and potentially dangerous, for Olson to have asked Martin to stand outside during a winter storm answering questions about the accident. *See Commonwealth v. Comolli*, 14 Mass.App.Ct. 607, 441 N.E.2d 536, 539 (1982) (Since defendant's car was "demolished" in pre-dawn accident, "bitterly cold" weather "conditions suggest that any questioning, custodial or not, might reasonably be expected to have taken place in a police vehicle, simply by reason of lack of any alternative shelter, heat, or light"); *see also Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S.Ct. 330, 333, 54 L.Ed.2d 331 (1977) (allowing police, because of concerns for officer safety after valid traffic stop, to order driver to exit his car for questioning); *State v. Mertz*, 362 N.W.2d 410, 413 (N.D.1985) (extending *Mimms* rationale to allow police, because of safety and weather concerns, to order driver into patrol car for issuance of traffic citation). Under these circumstances, Olson reasonably chose to conduct the accident investigation in his patrol car.

Once in the patrol car, Olson asked several general, common-sense investigatory questions: whether Martin was the driver of the vehicle in the ditch; whether he was alone; and where he was driving to and coming from. *See Miranda*, 384 U.S. at 477–78, 86 S.Ct. at 1629–30 ("General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our

holding."); *State v. Pitman*, 427 N.W.2d 337, 341 (N.D.1988) (noting distinction between "custodial interrogation" and "general on-the-scene" investigatory questioning); *see also Cordoba v. Hanrahan*, 910 F.2d 691, 694 (10th Cir.) ("An officer arriving at the scene of an accident, therefore, may ask a person apparently involved in the accident a moderate number of questions to determine whether he should be issued a traffic citation, whether there is probable cause to arrest him, or whether he should be free to leave after the necessary documentation has been exchanged."), *cert. denied*, 498 U.S. 1014, 111 S.Ct. 585, 112 L.Ed.2d 590 (1990). A reasonable person in Martin's situation would have expected to answer these types of general questions after an accident. Paraphrasing *Berger*, 329 N.W.2d at 377, although the response implicated Martin for the driving element of the crime charged, we do not believe that, alone, establishes "custodial interrogation."

■ At the suppression hearing, Olson testified that, had Martin left the patrol car, he "would have probably had [Martin] get back in...." Relying on this testimony, Martin argues that "if Trooper Olson believed that Mr. Martin was not free to leave, a reasonable person cannot intelligently be said to have acted or believed otherwise." However, as the *Stansbury* Court explained:

> [A]n officer's views concerning the nature of an interrogation, or beliefs concerning the potential culpability of the individual being questioned, may be one among many factors that bear upon the assessment whether that individual was in custody, but only if the officer's views or beliefs were somehow manifested to the individual under interrogation and would have affected how a reasonable person in that position would perceive his or her freedom to leave.

—— U.S. at ——, 114 S.Ct. at 1530; *see also Berkemer*, 468 U.S. at 442, 104 S.Ct. at 3151 ("policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time"). There is no evidence here that Olson "manifested" his view that Martin was not free to leave. Therefore, Olson's subjective belief is irrelevant to the custody determination.

Under these circumstances, a reasonable person in Martin's position would not have believed that accompanying Olson to his patrol car during a winter storm to answer general investigatory questions after an accident, was a "'restraint on freedom of movement' of the degree associated with a formal arrest." *Beheler*, 463 U.S. at 1125, 103 S.Ct. at 3520 (quoting *Mathiason*, 429 U.S. at 495, 97 S.Ct. at 714). *Compare United States v. Henley*, 984 F.2d 1040, 1042 (9th Cir.1993) (custodial questioning of suspect by FBI agent while handcuffed in back of police car); *Fasching*, 453 N.W.2d at 762 (custodial questioning of suspect locked in police car and denied access to her attorney-passenger). Therefore, on the facts of this case, we conclude that Martin's statement was not the product of custodial interrogation in an inherently coercive, police-dominated atmosphere.

We affirm the conviction of driving under the influence.

VANDE WALLE, C.J., and LEVINE, NEUMANN and SANDSTROM, JJ., concur.