1997 ND 112

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Mike ELDRED, Defendant and Appellant.**

**Criminal Nos. 960315, 960316, and 960317.**

Supreme Court of North Dakota.

June 3, 1997.

---

**286**

Marvin K. Madsen, State's Attorney, Mohall, for plaintiff and appellee. Submitted on brief.

Scott J. McDonald, McDonald Law Offices, Bowman, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Mike Eldred appealed from a jury verdict finding him guilty of carrying a loaded weapon in a vehicle, possession of a firearm by a convicted felon, and possession of drug paraphernalia. Eldred challenges the conviction on several grounds. We affirm.

[¶ 2] On October 17, 1994, outside a Mohall, North Dakota bar, Renville County Sheriff Robert Thomas served Eldred with a search warrant for his vehicle. Eldred contends he was intoxicated at the time of service. Sheriff Thomas searched the vehicle and discovered a shotgun and drug pipe. As the vehicle was being searched, Eldred remained outside the bar, even though Sheriff Thomas had not instructed him to do so. Eldred was not handcuffed, read his *Miranda* rights, or arrested during the time of the search. Later that day, Eldred, without being asked, went to the Sheriff's office and volunteered information regarding the items discovered in the search. Eldred was charged with possession of drug paraphernalia, carrying a loaded firearm in a motor vehicle, and, unlawful possession of a firearm, because Eldred had a previous felony conviction.[1]

[¶ 3] Eldred, through his attorney, waived his right to a preliminary hearing.[2] Prior to trial, Eldred moved to suppress all evidence of his conversation with Sheriff Thomas during the search and Eldred's subsequent visit to the Sheriff's office prior to his arrest. Eldred also moved to dismiss the unlawful possession of a firearm charge. The trial court denied these motions and Eldred challenges these rulings on appeal and raises four other issues.

### Preliminary Hearing

[¶ 4] Eldred contends the trial court erred in denying his motion for a preliminary hearing. Under Rule 5(c)(1), N.D.R.Crim.P., a defendant charged with a felony has a right to a preliminary hearing and, if assisted by counsel, can waive this right.[3] We will not reverse a trial court's decision to grant a counsel-assisted waiver absent evidence on the record which demonstrates there was no valid reason to waive the preliminary hearing. *State v. Kunkel*, 366 N.W.2d 799, 801

---

1. The complaint alleges Eldred violated section 62.1–02–01(2), N.D.C.C., having been "convicted of a Felony and being in possession of a firearm ... within 5 (five) years from the date of his release from probation...." Eldred was convicted of one count of possession of a controlled substance with intent to deliver and two counts of delivery of a controlled substance in 1988.

2. Following the waiver of the preliminary hearing, Eldred retained different counsel, who represented him at trial and on appeal.

3. Rule 5(c)(1), N.D.R.Crim.P., states, in part, "[i]f the offense charged is a felony, the defendant has the right to a preliminary examination. The defendant may waive the right to preliminary examination at the initial appearance if assisted by counsel...."

(N.D.1985). It is not the role of this Court to determine trial strategy. *Id.* at 801 (citing *State v. Motsko,* 261 N.W.2d 860, 864 (N.D. 1977)).

[¶ 5] Here, Eldred argues the trial court improperly denied his motion to withdraw his waiver of his right to a preliminary hearing. However, there is nothing on the record which demonstrates Eldred was not aware of his right to a preliminary hearing. At Eldred's initial appearance, the trial court made clear the right to the hearing and the right to have counsel present at such a hearing. Eldred stated he understood this right and told the court he would seek counsel to represent him. Eldred, through his counsel, then waived his right.

[¶ 6] Eldred cites to *Kunkel* as authority that the right to a preliminary hearing should not be "hastily disregarded as a mere formality ..." because it provides the defendant an opportunity to more fully understand the charges against him or her. 366 N.W.2d at 801. Eldred is correct in this assertion, but *Kunkel* does not hold a party cannot validly waive the right to a preliminary hearing. Our holding in *Kunkel* only states counsel does not need to "articulate on the record" why counsel gave such advice. *Id.* Moreover, *Kunkel* was argued on the ground of ineffective assistance of counsel and is distinguishable because Eldred does not make such a contention. Eldred validly waived his right to a preliminary hearing, and his argument the trial court abused its discretion in not permitting him to withdraw that waiver is not supported by any authority. We conclude the trial court did not abuse its discretion in denying Eldred's motion to withdraw his waiver.

### Motion to Suppress

[¶ 7] Eldred argues the trial court erred when it denied his motion to suppress the statements he made to Sheriff Thomas during the vehicle search and at the Sheriff's office. Eldred maintains he was in a custodial situation and had not been given his *Miranda* warning, and therefore, any comments made during this time are inadmissible. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[¶ 8] We will affirm a trial court's motion to suppress evidence, "unless, after resolving conflicting evidence in favor of affirmance, we conclude there is insufficient competent evidence to support the decision, or unless we conclude the decision goes against the manifest weight of the evidence." *State v. Martin,* 543 N.W.2d 224, 226 (N.D. 1996) (quoting *State v. Hawley,* 540 N.W.2d 390, 392 (N.D.1995)).

[¶ 9] Although we generally defer to a trial court's finding of facts on interrogations, the ultimate question of "whether a suspect is 'in custody,' and therefore entitled to *Miranda* warnings, presents a mixed question of law and fact qualifying for independent review." *Thompson v. Keohane,* — U.S. ——, ——, 116 S.Ct. 457, 460, 133 L.Ed.2d 383 (1995). Thus, we fully review whether a peace officer's questioning was investigatory or custodial in nature. *Martin,* 543 N.W.2d at 226.

[¶ 10] When a person is in custody and being interrogated by law enforcement, the individual must be apprised, or warned, of his or her rights. *Id.* Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612; *State v. Pitman,* 427 N.W.2d 337, 340 (N.D. 1988). When analyzing whether an individual was in custody, all the circumstances surrounding the interrogation must be considered, but "the ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (quoting *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977)); *see also State v. Connery,* 441 N.W.2d 651, 654 (N.D.1989). As the Supreme Court explained in *Berkemer v. McCarty,* "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984).

[¶ 11] Eldred contends he was in a custodial situation when Sheriff Thomas escorted him out of the bar to serve the search warrant. Eldred maintains, despite the fact he was not told he had to stay, the totality of the circumstances give rise to a custodial interrogation, requiring a *Miranda* warning.

[¶ 12] On this record, it does not appear Eldred was ever in custody, let alone involved in an interrogation. Eldred walked out of the bar with Thomas and voluntarily stayed outside while Thomas searched his vehicle. Eldred was never handcuffed nor were their any restraints placed upon his freedom. From this, Eldred could not have reasonably understood this to be a custodial situation for the purposes of interrogation.

[¶ 13] Eldred further argues his intoxication led to a involuntary waiver of his constitutional right against self-incrimination. For a waiver of a constitutional right to be valid, the waiver must be given voluntarily. *State v. Olson*, 544 N.W.2d 144, 146 (N.D. 1996). Eldred is not claiming Sheriff Thomas threatened or coerced him to make the statements or that he was under duress when he talked to the Sheriff. Eldred contends but for his intoxication, he would have never made a statement to the Sheriff. Eldred argues he was so intoxicated he did not know what he was doing, and thus, the statements were involuntary.

[¶ 14] This argument, although creative, is meritless. The evidence shows Eldred walked with Sheriff Thomas out of the bar, did not need any assistance to stand, and communicated with the Sheriff and Deputies with no evidence of total intoxication. There is nothing on this record to show Eldred was so intoxicated he did not know what he was doing. Moreover, it is not the State's burden, upon receiving statements or confessions, to prove the speaker was lucid enough to understand what he or she was saying. To say peace officers may not rely on statements and confessions given voluntarily would severely hamper their ability to investigate criminal activity. The evidence does not show Eldred was too intoxicated to understand or comprehend his actions. He made the statements and confessions to the Sheriff outside of a custodial setting, and these statements were voluntarily made. The trial court did not err when it denied Eldred's motion to suppress.

## Motion to Dismiss

[¶ 15] Eldred maintains the trial court erred when it denied his motion to dismiss the unlawful possession of a firearm charge. Eldred makes two contentions: 1) the statute requires the previous felony conviction be one involving the use and possession of a firearm, and; 2) the statute is unconstitutionally vague and ambiguous.

[¶ 16] North Dakota Century Code Section 62.1–02–01, "Who not to possess firearms" states, in relevant part:

"1. A person who has been convicted anywhere for a felony involving violence or intimidation, as defined in chapters 12.1–16 through 12.1–25, is prohibited from owning a firearm or having one in possession or under control from the date of conviction and continuing for a period of ten years after the date of conviction or release from incarceration or probation, whichever is the latter.

2. A person who has been convicted of any felony not provided for in subsection 1 or has been convicted of a class A misdemeanor involving violence or intimidation and that crime was committed while using or possessing a firearm or dangerous weapon, as defined in chapters 12.1–16 through 12.1–25, is prohibited from owning a firearm or having one in possession or under control from the date of conviction and continuing for a period of five years after the date of conviction or release from incarceration or probation, whichever is the latter."

[¶ 17] Eldred's previous convictions, all felonies, were possession of a controlled substance with intent to deliver and two counts of delivery of a controlled substance. Eldred argues these convictions do not fall under the statute so as to prohibit his possession of a firearm because they were not committed with violence or intimidation and did not involve the use of a firearm.

[¶ 18] Section 62.1–02–01(2) provides a person convicted of a felony not included in

subsection one or of a class A misdemeanor involving violence or intimidation "*and* that crime was committed while using or possessing a firearm . . ." may not possess a firearm. (emphasis added). Eldred construes the modifying phrase "involving violence or intimidation" to apply to felonies as well as misdemeanors because the word "crime" does not specifically refer to misdemeanors rather than felonies.

■ [¶ 19] When interpreting a statute, we first determine if the statute, on its face, is unambiguous. *Bouchard v. Johnson,* 555 N.W.2d 81, 83 (N.D.1996). If it is, we apply the plain language. *County of Stutsman v. State Historical Society,* 371 N.W.2d 321, 325 (N.D.1985). However, when a statute is not clear on its face, we look to extrinsic aids, such as legislative history, to determine the legislature's intent. *Id.* at 325.

[¶ 20] Section 62.1–02–01 originated from the Interim Judiciary Committee for the 1983–1985 legislative interim and was enacted during the 1985 legislative session. In the interim committee reports, there is nothing discussing the application of the "using or possessing a firearm . . ." language specifically to felonies or misdemeanors. Although there was concern that a person could be prohibited from possessing a firearm if they committed an offense such as writing a bad check, this concern was raised in discussion of section 62.1–01–02, N.D.C.C., which requires the forfeiture of firearms used or possessed in the commission of a felony or a misdemeanor.[4] There is little in the legislative history which provides guidance, other than confirming the general intent is to ensure public safety and keep firearms or dangerous weapons away from those people who may threaten public safety. Eldred contends a Legislative Council Staff Report, dated April 1985, which states, "[t]he bill also forbids possession of firearms by persons who have been convicted of particular types of felonies and misdemeanors . . . ." demon-strates the possession ban is to apply to both felons and misdemeanants. This staff report, although stating the statute's general purpose, offers no guidance as to whether the prohibition dictated in subsection 2 applies to all felonies and class A misdemeanors or only those committed while using or possessing a firearm or dangerous weapon.

■ [¶ 21] If subsection 2 of section 62.1–02–01 is ambiguous, we read it so the phrase "and that crime was committed while using or possessing a firearm or dangerous weapon . . ." applies only to class A misdemeanors. This interpretation is based on the legislature's use of the disjunctive "or" rather than the conjunctive "and" in the portion of subsection 2 which reads "[a] person who has been convicted of any felony not provided for in subsection 1 *or* . . . a class A misdemeanor involving violence or intimidation . . . ." (emphasis added). *See* N.D.C.C. § 1–02–03 (rules of grammar must be used when interpreting statutory words and phrases).

[¶ 22] Moreover, if the prohibition found in subsection 2 were to apply only to felonies committed while using or in possession of a firearm, the legislature's intent to protect the public from those who pose a threat to public safety would be thwarted. Because felonies require heightened criminal activity, and therefore pose a greater threat to public safety, it is reasonable to believe the legislature intended the prohibition to be applicable to all felonies, not just those felonies committed with violence or intimidation, or those committed using or while in possession of a firearm or dangerous weapon.

[¶ 23] Alternatively, Eldred argues section 62.1–02–01 is unconstitutionally vague because the statutes do not define what felonies and misdemeanors are violent and intimidating. We are not persuaded by Eldred's arguments.

---

4. Section 62.1–01–02 states:

"Any firearm or dangerous weapon used or possessed while in the commission of a felony or a misdemeanor involving violence or intimidation must be seized and, upon conviction and by motion, forfeited to the jurisdiction in which the arrest was made or the jurisdiction in which the charge arose. Except as provided in chapter 29–01 for stolen property, the forfeited firearm or dangerous weapon may be, pursuant to court order, sold at public auction, sold or traded to other law enforcement agencies or authorized firearm dealers, retained for use, or destroyed."

[¶ 24] The due process clauses of the state and federal constitutions require criminal statutes be definite. *Best Products Co., Inc. v. Spaeth*, 461 N.W.2d 91, 100 (N.D. 1990). A statute is unconstitutionally vague if it does not provide adequate and fair warning as to the proscribed conduct and create minimum guidelines for peace officers to follow. *State v. Mertz*, 514 N.W.2d 662, 667 (N.D.1994). We review the statute to determine if these two dictates are clear under a "reasonable person" standard. *Id.* at 668 (citing *State v. Tranby*, 437 N.W.2d 817, 821 (N.D.1989), *cert. denied*, 493 U.S. 841, 110 S.Ct. 128, 107 L.Ed.2d 88 (1989)). Not every statute which has some uncertainties, however, is unconstitutionally vague. *State v. Schwalk*, 430 N.W.2d 317, 320 (N.D.1988). The due process clause only requires the statute give enough guidance and warning so that people " 'may conduct themselves so as to avoid that which is forbidden.' " *Id.* at 320 (quoting *Rose v. Locke*, 423 U.S. 48, 49–50, 96 S.Ct. 243, 244, 46 L.Ed.2d 185 (1975)).

[¶ 25] Eldred was charged with possessing a firearm within five years of having been released from probation for conviction of a felony under subsection 2 of section 62.1–02–01, N.D.C.C., not the ten-year prohibition in subsection 1 involving violence or intimidation. He was not charged with possession of a firearm after having been convicted of a class A misdemeanor involving violence or intimidation. Therefore, Eldred's concern over the lack of definition of what felonies and misdemeanors are violent and intimidating is immaterial to Eldred's position.

### Motion to Exclude Witness

[¶ 26] Eldred argues the trial court erred when it granted the State's motion in limine to exclude Eldred's witness, University of North Dakota English Professor George Slanger. We review a trial court's disposition of a motion in limine under a different standard than a motion to suppress, deferring to the trial court's discretion "to determine whether evidence is relevant." *Williston Farm Equip., Inc. v. Steiger Tractor, Inc.*, 504 N.W.2d 545, 548 (N.D.

1993). We will not reverse a trial court's decision absent an abuse of discretion. *Id.* at 549.

[¶ 27] Eldred intended to call Slanger to apparently testify, under his interpretation of section 62.1–02–01(2), the statute did not apply to Eldred and this interpretation would support Eldred's requested jury instruction on the affirmative defense of "mistake of law."

[¶ 28] Section 12.1–05–09 states, in relevant part:

"Mistake of law. Except as otherwise expressly provided, a person's good faith belief that conduct does not constitute a crime is an affirmative defense if he acted in reasonable reliance upon a statement of the law contained in:

    1. A statute or other enactment.

    2. A judicial decision, opinion, order, or judgment.

    * * * *"

[¶ 29] The "mistake of law" defense is ordinarily not applicable when the governing statute does not contain a culpability requirement. *State v. Fridley*, 335 N.W.2d 785, 789 (N.D.1983).

[¶ 30] Strict liability does not always preclude affirmative defenses. *E.g.*, *State v. Rasmussen*, 524 N.W.2d 843, 845 (N.D.1994) (public policy factors support affirmative defense to driving under suspension in life-threatening circumstances). However, a mistaken belief as to the law is seldom available as a defense. *E.g.*, *State v. Nygaard*, 447 N.W.2d 267, 271 (N.D.1989) (excuse based on a "mistaken belief" is not available for strict-liability offense of failing to stop after an accident).

[¶ 31] Section 62.1–02–01 does not have a culpability requirement. It is a strict-liability statute. Although Eldred contends section 62.1–02–01 is criminal, and the willful culpability requirement of N.D.C.C. § 12.1–02–02(2) [5] should be read into section 62.1–02–01, we have stated section 12.1–02–02(2) is only applicable to Title 12.1, and the

---

5. Section 12.1–02–02(2), N.D.C.C., states, "[i]f a statute or regulation thereunder defining a crime does not specify any culpability and does not provide explicitly that a person may be guilty without culpability, the culpability that is required is willfully."

willful culpability level will not be read into other chapters unless the legislature specifically states as such. *Nygaard,* 447 N.W.2d at 270 (citing *City of Dickinson v. Mueller,* 261 N.W.2d 787, 789 (N.D.1977)). Eldred violated the statute by having the shotgun in his car. The trial court did not abuse its discretion in refusing to allow Slanger to testify as to the mistake-of-law defense.

### Jury Instructions

[¶ 32] Eldred maintains the trial court erred when it instructed the jury regarding the unlawful possession of a firearm charge with an instruction using "possession of a firearm by a convicted felon." Eldred contends this is prejudicial, and the trial court should have worded the charge "unlawful possession of a firearm."

[¶ 33] We review a trial court's jury instructions under the "clearly erroneous" standard. *State v. Huber,* 555 N.W.2d 791, 793 (N.D.1996) (citing *State v. Marshall,* 531 N.W.2d 284, 287 (N.D.1995)). Jury instructions, as a whole, must adequately inform the jury of the applicable law. *Marshall,* 531 N.W.2d at 287 (citing *State v. Azure,* 525 N.W.2d 654, 658 (N.D.1994)). On appeal, we will reverse if an instruction "is erroneous, relates to a central subject in the case, and affects a substantial right of the accused." *Marshall,* 531 N.W.2d at 287.

[¶ 34] We do not believe the phrase "possession of a firearm by a convicted felon" created an undue prejudice against Eldred. It was clear throughout the trial why Eldred was being charged with unlawful possession, and it is artless to argue the jury did not know of Eldred's previous conviction or understand the nature of the charge. There are, after all, other persons who may not possess a firearm, but here, one of the essential elements of the crime with which Eldred was charged was his prior conviction of a felony. Although Eldred's requested instruction of "unlawful possession of a firearm" is more neutral, a trial court is not required to use the defendant's proposed instructions. *See Azure,* 525 N.W.2d at 658. We affirm the instructions as to the charge of unlawful possession of a firearm.

### Jury Pool

[¶ 35] Lastly, Eldred contends he was prejudiced by the makeup of the jury pool because it contained a disproportionate number of citizens from his home town who were predisposed to his guilt.

[¶ 36] For trial, only twenty-two people called for jury duty appeared, two less than the statutory requirement of twenty-four. N.D.C.C. § 29-17-09. When an inadequate number of jurors do not appear on the date set for jury selection, the court "may order the sheriff to summon from the body of the county as many persons as it may think proper, sufficient to make at least twenty-four jurors, from whom a jury for the trial of the cause may be selected." N.D.C.C. § 29-17-09. This is what the trial court did. Eldred has presented no credible argument or evidence which would demonstrate the additional jury pool members were prejudiced against him. Moreover, not one of the five additional jury pool members were seated on the jury.

[¶ 37] We affirm the conviction.

SANDSTROM, NEUMANN, MARING, and MESCHKE, JJ., concur.

